DECISION
{¶ 1} Relator, Debra Hauck, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order that denied relator's application for temporary total disability ("TTD") compensation and ordering the commission to find that she is entitled to that compensation. *Page 2 
 {¶ 2} This matter was referred to a court appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) Relator has filed objections to the magistrate's decision.
 {¶ 3} Relator argues that Dr. John Scharf's reviewing physician's report cannot be considered "some evidence." Relator's main basis is that Dr. Scharf disregarded the factual findings in the examining physician's reports when he concluded that the record presented insufficient documentation regarding relator's inability to work because the new conditions of canal stenosis and aggravation of pre-existing degenerative disc disease would not necessarily produce any symptoms. We agree with relator's contention. We first note that relator's allowed condition was for aggravation of pre-existing degenerative joint disease, not disc disease, as Dr. Scharf indicated. Notwithstanding, inWallace v. Indus. Comm. (1979), 57 Ohio St.2d 55, the Ohio Supreme Court held that "the nonexamining physician is required to expressly accept all the findings of the examining physician, but not the opinion drawn therefrom." Id., at 59. Here, although Dr. Scharf "expressly" accepted the findings of the examining physician in word, he did not accept the findings in practice. Dr. Scharf indicated that neither canal stenosis nor degenerative disc (joint) disease necessarily produced symptoms. However, the examining physician made several objective findings in his reports and notes that indicated relator's newly allowed conditions were producing symptoms. The examining physician noted a worsened range of motion, decreased strength, and increased spasms. The examining physician indicated these findings were objective based upon the examination and testing *Page 3 
of relator. Despite Dr. Scharf's claim that he had accepted the medical findings of the examining physician, he wholly ignored these findings. Although Dr. Scharf's statement might be true that these allowed conditions do not "necessarily" produce symptoms and "may" be entirely asymptomatic, the examining physician's notes and reports make clear that such was not the case in relator's situation. Given the clearly documented symptoms, Dr. Scharf's ultimate opinion that there was insufficient documentation of relator's "inability to work" cannot stand without any other underlying basis for that conclusion. Therefore, we find Dr. Scharf's July 6, 2004 reviewing physician's report cannot constitute some evidence, as Dr. Scharf did not comply withWallace, supra. Because the staff hearing officer relied solely upon Dr. Scharf's report in denying the requested TTD compensation, the commission's order was not based on some evidence. For these reasons, relator's objections are sustained.
 {¶ 4} After an examination of the magistrate's decision, an independent review of the evidence, pursuant to Civ.R. 53, and due consideration of relator's objections, we sustain the objections. Accordingly, although we adopt the magistrate's decision as our own with regard to the findings of fact, we do not adopt the conclusions of law based upon the reasoning set forth above. Therefore, we grant relator's request for a writ of mandamus. The matter is remanded to the commission to reconsider relator's entitlement to TTD compensation without consideration of Dr. Scharf's July 6, 2004 report.
Objections sustained; writ granted.
 PETREE and TYACK, JJ., concur. *Page 4 APPENDIX A MAGISTRATE'S DECISION
Rendered on September 26, 2006
James A. Whittaker, LLC, James A. Whittaker and Laura I. Murphy, for relator.
Jim Petro, Attorney General, and Douglas R. Unver, for respondent Industrial Commission of Ohio.
 {¶ 5} Relator, Debra Hauck, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for temporary total *Page 5 
disability ("TTD") compensation and ordering the commission to find that she is entitled tothat compensation.
Findings of Fact:
 {¶ 6} 1. Relator sustained a work-related injury on March 10, 1996, and her claim has been allowed for "sprain lumbar; fracture tibial fibula left; aggravation of pre-existing canal stenosis L4-5 and aggravation of pre-existing degenerative joint disease at L4-5 and L5-S1."
 {¶ 7} 2. Relator sought treatment from Brian R. Nobbs, D.C., in August 2001, following an exacerbation of her 1996 work injury. In his report dated June 20, 2002, Dr. Nobbs noted that in October 2001, relator presented with constant lumbar pain bilaterally which was aggravated by any activity where straining was involved. According to Dr. Nobbs, relator denied any new injuries to her lumbar region since 1996. Between October 2001 and June 2002 when he wrote his report, Dr. Nobbs noted that relator has had numerous exacerbations which have hindered her recovery. He noted further that relator had attempted several trial separations from ongoing care which resulted in deterioration of her condition each time. He opined that supportive care was necessary. Dr. Nobbs also indicated that relator has a permanent partial disability which, by definition, constitutes a chronic condition requiring ongoing corrective and supportive care. He noted further that relator's condition is complicated by the fact that she has underlying arthritis. He concluded his report by indicating that he anticipated relator would reach maximum medical improvement ("MMI") within two to three months.
 {¶ 8} 3. The record also contains Dr. Nobbs office notes from October 8, 2001 through September 15, 2004. In his November 7, 2003 report, Dr. Nobbs noted again *Page 6 
that relator has permanent impairment due to the injuries she suffered at work. Dr. Nobbs completed C-84s certifying relator as being temporarily and totally disabled from October 8, 2001 and continuing.
 {¶ 9} 4. Relator filed a motion requesting the payment of TTD compensation on June 4, 2004. Relator requested TTD compensation beginning October 8, 2001 to the present and continuing.
 {¶ 10} 5. A file review was performed by Dr. John R. Scharf regarding the question of whether, based upon a review of the medical documentation and history of the industrial injury, the requested period of disability from October 8, 2001 to the present and continuing was related to the injury. In his July 6, 2004 report, Dr. Scharf listed the allowed conditions as follows: "(847.2) lumbar sprain, (823.80) fracture tibia-closed, left, (724.02) aggravation of pre-existing canal stenosis L4/5, (722.52) aggravation of preexisting degenerative disc disease at L4/5 and L5/S1." Thereafter, Dr. Scharf indicated that he had read and accepted the medical findings in relator's file. Dr. Scharf noted how the injury happened, as well as the findings demonstrated by the MRIs taken in April 1996 and April 2002. Thereafter, Dr. Scharf noted that relator's claim had recently been allowed for canal stenosis and aggravation of pre-existing degenerative disc disease but that neither of those conditions necessarily produced symptoms. He concluded as follows:
 * * * There is no continuing thread of this IW's inability to work for the past 2 ½ years. I feel despite the new allowances that there is insufficient documentation in this chart regarding this IW's inability to work over this prolonged period of time and therefore the requested POD is not documented and therefore not substantiated by the information available to me in the chart. *Page 7 
 {¶ 11} 6. Relator's application for compensation was heard before a district hearing officer ("DHO") on August 10, 2004. The DHO specifically noted that relator's request for TTD compensation prior to June 4, 2002, was barred by the two-year statute of limitations. Thereafter, the DHO concluded that the requested period of compensa-tion was not causally related to the allowed conditions in the claim based upon the July 6, 2004 report of Dr. Scharf.
 {¶ 12} 7. Relator filed an appeal asserting that her C-84 had been on file since October 2001 and, further, that the new conditions which were recently allowed clearly provide the change in circumstances necessary in order to reinstate her TTD compensation.
 {¶ 13} 8. Relator's appeal was heard before a staff hearing officer ("SHO") on October 21, 2004. The SHO vacated the prior DHO's order but still denied the requested period of TTD compensation beginning October 8, 2001. The SHO specifically found that the requested period of compensation was not causally related to relator's allowed conditions based upon the July 6, 2004 report of Dr. Scharf.
 {¶ 14} 9. Relator's further appeal was refused by order of the commission mailed November 4, 2004.
 {¶ 15} 10. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 16} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of *Page 8 
mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 17} Relator's sole argument in this mandamus action is that the report of Dr. Scharf cannot constitute some evidence upon which the commission could properly rely because, although he indicated that he read and accepted the medical findings in the file, he did not address the medical findings, he inaccurately stated that there is no neural foraminal stenosis, and he failed to note what relator's former position of employment was. For the reasons that follow, this magistrate concludes that relator's arguments lack merit.
 {¶ 18} In State ex rel. Wallace v. Indus. Comm. (1979),57 Ohio St.2d 55, the Supreme Court of Ohio held that a non-examining physician is required to expressly accept all the findings of examining physicians, but not necessarily the opinions drawn therefrom. In that case, Dr. Davies only indicated in his report that if he were to consider only the recognized conditions, then the claimant was permanently and totally disabled. Dr. Davies did not indicate that he had reviewed the other medical evidence submitted to him nor that he accepted the findings of the three other physicians who had examined the claimant. The court noted that, while Dr. Davies could have disagreed with the opinions of *Page 9 
the other three physicians as to whether the claimant's condition could improve, or whether he was a viable candidate for rehabilitation, Dr. Davies could not ignore the full extent of the factual foundation which was presented to him by their reports.
 {¶ 19} Later, in State ex rel. Hughes v. Goodyear Tire RubberCo. (1986), 26 Ohio St.3d 71, the plurality of the court sustained as constituting "some evidence" the reports of several non-examining physicians, including one which merely indicated that all medical reports had been reviewed (without naming the doctors), and which cited numerous findings from those reports (without attributing them to any specific examiner). The court held that reports of non-examining physicians which consider and impliedly accept all of the allowed conditions relative to the claim before rendering a final evaluation with respect to impairment constitute "some evidence" to support a commission allowance or disallowance of a claim. The court stated that its opinions in this area:
 * * * [S]hould not provide the basis for usurping the role of the commission in determining disability by creating arbitrary exclusionary rules that eliminate evidence the commission might find credible because such evidence fails to include "magic words" to conform with hypertechnical evidentiary rules, e.g., "I expressly adopt the findings but not the opinion of Dr. `X.' " * * *
Id. at 74.
 {¶ 20} Later, in State ex rel. Lampkins v. Dayton Malleable, Inc.
(1989), 45 Ohio St.3d 14, the court, applying Wallace, found that the report of Dr. Walker could not constitute some evidence upon which the commission could rely because Dr. Walker did not indicate, either expressly or impliedly, that he even considered, let alone accepted, the findings of the examining physicians. The court also found that the report of Dr. Walsh could not constitute some evidence upon which the commission relied because *Page 10 
there was nothing in his report to indicate that all medical reports were reviewed and considered.
 {¶ 21} Applying those cases to the present case, this magistrate finds that Dr. Scharf's report did meet the criteria established inWallace and its progeny. First, Dr. Scharf noted the allowed conditions. The magistrate finds that noting "aggravation of preexisting degenerative disc disease at L4/5 and L5/S1" is synonomous with "aggravation of pre-existing degenerative joint disease at L4-5 and L5-S1." (Emphasis added.) Second, Dr. Scharf specifically indicated, in his report, that he had read and accepted the medical findings in the file. Dr. Scharf then identified the MRIs in the record and noted the findings. Relator does not argue that there was any medical evidence provided to Dr. Scharf except for the records and reports of her treating physicians and the two MRIs. The magistrate finds that there was no reason for Dr. Scharf to specifically indicate that he had read and accepted the medical findings of Dr. Nobbs when Dr. Nobbs' records and reports were the only ones in the file.
 {¶ 22} The only potential ambiguity in Dr. Scharf's report would be based upon the fact that he stated both that there was "no evidence of significant neural foraminal stenosis" and that there was "no neural foraminal stenosis." However, because Dr. Scharf indicated that any neural foraminal stenosis present was not significant, the magistrate finds that this is not a reason to remove his report from evidentiary consideration. Dr. Scharf ultimately concluded that the record presented insufficient documentation regarding relator's inability to work over this prolonged period of time because the new conditions of canal stenosis and aggravation of pre-existing degenerative disc disease would not necessarily produce any symptoms. His opinion *Page 11 
contradicted the opinion of relator's treating physician that her conditions and symptoms had worsened rendering her temporarily and totally disabled.
 {¶ 23} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in relying upon the report of Dr. Scharf and in denying her TTD compensation and relator's request for a writ of mandamus should be denied. *Page 1