[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Heilman v. Indus. Comm.*, Slip Opinion No. 2024-Ohio-5518.]

<u>NOTICE</u>

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-5518

THE STATE EX REL. HEILMAN, APPELLEE AND CROSS-APPELLANT, *v.*

INDUSTRIAL COMMISSION OF OHIO APPELLANT AND CROSS-APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Heilman v. Indus. Comm.*, Slip Opinion No. 2024-Ohio-5518.]**

*Mandamus—Workers' compensation—Commission abused its discretion by denying claimant's request for scheduled-loss benefits based solely on nonexamining physician's report that did not accept the objective factual findings of all examining physicians in compliance with* Wallace v. Indus. Comm.*—Commission may use noncomplying reports as guidance in reviewing remaining medical evidence—Court of appeals' judgment granting limited writ ordering commission to vacate its order denying claimant's loss-of-use compensation and to issue a new order granting or denying the request affirmed.*

(No. 2023-1258—Submitted July 9, 2024—Decided November 26, 2024.)

APPEAL from the Court of Appeals for Franklin County, No. 21AP-353,

2023-Ohio-3073.

_____

The per curiam opinion below was joined by FISCHER, DONNELLY, STEWART, and BRUNNER, JJ. KENNEDY, C.J., dissented, with an opinion joined by DEWINE and DETERS, JJ.

**Per Curiam.**

{¶ 1} Appellant and cross-appellee, Industrial Commission of Ohio, denied scheduled-loss compensation under R.C. 4123.57(B) to appellee and cross-appellant, Patricia A. Heilman ("Heilman"), the surviving spouse of Arthur J. Heilman ("the decedent"), who died as the result of an industrial accident. The Tenth District Court of Appeals granted Heilman a limited writ of mandamus ordering the commission to vacate its order denying scheduled-loss compensation and to determine whether Heilman has established the decedent's loss of use of certain body parts and bodily functions under R.C. 4123.57(B) and grant or deny compensation accordingly. Both the commission and Heilman have appealed. We affirm the court of appeals' judgment granting a limited writ of mandamus.

## I. BACKGROUND

### A. Heilman's Request for "Loss-of-Use" Compensation

{¶ 2} The decedent was working as a machinist for H. Hansen Industries ("the employer")[1] on April 4, 2019, when a piece of machinery exploded. He was struck in the head by a metal beam, thrown backwards, and was immediately unresponsive. He arrived at the emergency department bleeding from the nose and mouth with injuries to his head and face. The decedent received emergency care, including a craniotomy, but never regained consciousness. He died two days later.

_____

1. The employer is owned and operated by Riverside Maine Industries, Inc., which was a named as a respondent in the mandamus action but has not appeared before this court in this case.

**{¶ 3}** The Bureau of Workers' Compensation allowed Heilman's application for death benefits. In addition to her application for death benefits, Heilman requested scheduled-loss compensation under R.C. 4123.57(B), claiming that before his death, the decedent had suffered the loss of use of both of his arms and both of his legs, the loss of sight in both eyes, and the permanent and total loss of hearing in both ears.

**{¶ 4}** R.C. 4123.57(B) authorizes the payment of scheduled compensation to a claimant for the loss of enumerated body parts and bodily functions, such as the loss of an arm or a leg, the "permanent and total loss of hearing," or the "loss of the sight of an eye." For purposes of R.C. 4123.57(B), the "loss" of a body part includes amputation or severance as well as a "loss of use" that is both permanent and total, to the same effect and extent as if the body part had been physically removed. *State ex rel. Walker v. Indus. Comm.*, 58 Ohio St.2d 402, 403-404 (1979).[2] A claimant[3] may demonstrate with medical evidence that a total loss of use of the body part at issue has occurred "'for all practical purposes.' " *State ex rel. Alcoa Bldg. Products v. Indus. Comm.*, 2004-Ohio-3166, ¶ 10, quoting *State ex rel. Gassmann v. Indus. Comm.*, 41 Ohio St.2d 64 (1975).

**{¶ 5}** Multiple CT scans of the decedent's body revealed "[n]umerous fractures of the facial bone and skull involving" the left and right orbits, "extensive orbital wall fractures extending to optic canal areas and also fractures of the posterior orbits," an "[a]cute anterior T4 superior endplate fracture [i.e., a fracture of the fourth thoracic vertebra] with no significant height loss," and a "[f]ocal

---

2. The statute at issue in *Walker*, former R.C. 4123.57(C), 137 Ohio Laws, Part II, 3934, 3948-3950, was subsequently renumbered R.C. 4123.57(B), Am.Sub.S.B. No. 307, 141 Ohio Laws, Part I, 718, 769-777.

3. Under R.C. 4123.60, a surviving spouse may apply for an award of compensation to which the decedent would have been lawfully entitled to receive at the time of death. The parties have not contested Heilman's ability as a surviving spouse to seek an award under R.C. 4123.57(B) for a loss not caused by severance. *Compare State ex rel. Waste Mgt. of Ohio, Inc. v. Indus. Comm.*, 2022-Ohio-4581, ¶ 30, fn. 3.

paraspinal hematoma adjacent to the T4 fracture." However, hospital records indicate that the decedent's postinjury condition precluded any assessment of his vision and visual field. His hospital records make no mention of an auditory assessment or any indication that the decedent sustained injuries to his ears, arms, or legs. The county coroner, Diane Scala-Barnett, M.D., performed a postmortem examination of the decedent's body, completed the autopsy report, and concluded that the cause of death was "craniocerebral injuries."

## B. Nonexamining Physicians' Opinions

{¶ 6} The record includes medical opinions from three nonexamining physicians. The commission often relies on opinions from nonexamining physicians who perform a medical-file review as an aid in determining the extent of an injured worker's disability. *See State ex rel. Wallace v. Indus. Comm.*, 57 Ohio St.2d 55, 59-60 (1979). "[T]he non-examining physician is required to expressly accept all the findings of the examining physicians, but not the opinion drawn therefrom." *Id.* at 59; *see also State ex rel. Lampkins v. Dayton Malleable, Inc.*, 45 Ohio St.3d 14, 15-16 (1989) (recognizing that the "expressly accept" requirement in *Wallace* has been relaxed to include "implicit" acceptance).

### 1. Dr. Borrillo's Opinion

{¶ 7} Heilman submitted the medical opinion of Donato Borrillo, M.D., J.D., M.S., who is an attorney and is board-certified in preventive medicine. Dr. Borrillo reviewed the decedent's medical file and accepted "the following findings and reports of examining physicians . . . [i]n accordance with standards for file review." He opined that even if the decedent "had survived the increased intracranial pressure from his head injury, and stabilization of his T4 fracture, to a reasonable degree of medical certainty he would have a permanent and total loss of use of the four extremities." Dr. Borrillo further opined that the decedent "suffered a permanent loss of vision, as his bilateral orbits (and internal structures) were shattered. The optic nerve and structures related to the visual apparatus were no

doubt permanently injured." Dr. Borrillo offered no opinion regarding the decedent's loss of hearing.

### 2. Dr. Mareska's Opinion

**{¶ 8}** The bureau obtained an independent medical opinion from neurologist John C. Mareska, M.D. Dr. Mareska reviewed Dr. Borrillo's opinion, the autopsy and coroner's reports, and other medical evidence in the file. He stated that he accepted "the allowed condition in this claim, as well as the findings of the examining physician(s)." Dr. Mareska opined that there was insufficient evidence to support loss of vision or loss of hearing. He further opined that there was no loss of use of the decedent's arms and legs caused by an injury of the arms and legs themselves or by an injury of the spinal cord, and that there was "insufficient evidence to support the condition of loss of use of both arms and both legs as a result of loss of brain function secondary to the injury in question." Dr. Mareska based this latter opinion on "the absence of valid and reliable clinical evaluations (because examinations were done with sedatives and narcotics being used), of arm and leg motor movements not seen, plus the repeated presence of observed and documented spontaneous movements."

**{¶ 9}** Dr. Mareska additionally stated that the "reported autopsy findings of the cerebral hemispheres seem incongruent" and that the "findings of the left hemisphere . . . in [his] opinion, are not congruent nor consistent with each other." After reciting certain autopsy findings, Dr. Mareska concluded that he "could not rely on the described autopsy findings as being accurate or reliable." Later in the proceedings, the commission obtained an addendum report from Dr. Mareska, which is discussed below.

### 3. Dr. McGriff's Opinion

**{¶ 10}** The employer obtained an independent medical opinion from Patrick Kelley McGriff, D.O., a family physician. Dr. McGriff stated that he reviewed Heilman's motion, Dr. Borrillo's and Dr. Mareska's reports, a "case summary of

death," and the autopsy report. Dr. McGriff "disagree[d] with Dr. Mareska's conclusion in that the autopsy demonstrated evidence of injury specifically to the right and left frontal bones and orbital/occipital structures." He further opined that "at no time, irrespective of patient's sedation level, do records indicate that the patient purposely responded to any auditory commands." Finally, Dr. McGriff stated that he concurred with Dr. Borrillo's opinions and, for that reason, opined that "the claim should be additionally allowed [for] loss of use bilateral arms and bilateral legs, bilateral loss of vision, and bilateral loss of hearing." (Dr. Borrillo had not offered an opinion on loss of hearing, however.) Dr. McGriff concluded, "The above analysis is based upon history provided by the other examiners, findings on the examination and the information contained in the medical records I have reviewed. It is assumed that the material provided is correct."

### C. Administrative Proceedings

#### 1. Hearing Officers Deny Loss-of-Use Compensation

{¶ 11} After a hearing, a district hearing officer ("DHO") for the commission denied Heilman's request for loss-of-use compensation based on his finding that Dr. Mareska's opinion was "most persuasive." Heilman appealed. After a hearing on the appeal, a staff hearing officer ("SHO") for the commission vacated the DHO's order but again denied Heilman's request for loss-of-use compensation. The SHO determined that none of the three nonexamining physicians' reports are evidence on which the commission could rely.

{¶ 12} Specifically, the SHO found that Dr. Mareska's and Dr. McGriff's opinions did not comply with this court's holding in *Wallace*, 57 Ohio St.2d 55. The SHO determined that although Dr. Mareska had stated that he accepted the findings of the examining physicians, he had also stated that the autopsy findings were "not congruent nor consistent with each other" and that he "could not rely on the described [cerebral hemisphere] autopsy findings as being accurate or reliable."

6

And although Dr. McGriff specified that he had reviewed the autopsy report, the SHO found that he did not expressly accept the autopsy findings.

{¶ 13} Finally, the SHO found that Dr. Borrillo's report was "defective and unreliable" because he had based his opinion on findings not supported by the medical record. In particular, the SHO took issue with Dr. Borrillo's opinion that the decedent suffered a permanent spinal injury and that his bilateral orbits and internal structures were "shattered," because the autopsy report and the CT scan documented that the decedent's spinal cord and bilateral orbits were intact. The SHO further found that Dr. Borrillo provided no opinion on whether the decedent sustained a loss of bilateral hearing and that there was insufficient medical evidence of a hearing test or of any external injury to the decedent's ears.

{¶ 14} The SHO detailed the examining physicians' notes from the emergency department as well as the autopsy findings in Dr. Scala-Barnett's report, none of whom were asked to provide an opinion on whether the decedent had suffered any of the alleged losses of use. Ultimately, the SHO found that the weight of the evidence did not support Heilman's request for loss-of-use compensation.

{¶ 15} Heilman appealed the SHO's order, which the commission refused. She then moved for reconsideration of the SHO's order.

*2. Dr. Mareska's Addendum Report*

{¶ 16} Before ruling on Heilman's motion for reconsideration, the commission requested an addendum report from Dr. Mareska, in which he was asked to explain why he believes the autopsy findings are incongruent, inaccurate, or unreliable.

{¶ 17} Dr. Mareska provided a detailed response, comparing the autopsy report to the CT scan reports and other clinical findings. For instance, he reported that the CT scan of the decedent's brain showed no evidence of hydrocephalus or cortical thinning, yet the autopsy report shows a "large, quite enlarged" left ventricle, which Dr. Mareska describes as an "unexplained and unusual

discrepancy." Additionally, Dr. Mareska reported that the CT scan reports show an extensive subdural hematoma over the left cerebral hemisphere that is not reflected in the autopsy report, whereas the autopsy report shows a longitudinal laceration on the left hemisphere that is not supported by the CT scan reports or clinical correlations. In his opinion, "the autopsy report has several instances of either not being consistent within itself, and not being consistent with expected findings because of the clinical course."

{¶ 18} Dr. Mareska further opined that he did not agree with Dr. Borrillo's and Dr. McGriff's conclusions that the decedent sustained the alleged losses of use. He did not find the term "shattered," as used by Dr. Borrillo, used by any of the medical examiners in the medical file, and he opined that the evidence is insufficient to support the position that "shattering" of the bilateral orbital bones themselves would have caused permanent vision loss, contrary to Dr. Borrillo's opinion. Also contrary to Dr. Borrillo's opinion, Dr. Mareska opined that the decedent's medical record does not support Dr. Borrillo's opinion that the T4 fracture would have resulted in permanent loss of purposeful movement of his extremities had the decedent survived his injury.

### 3. The Commission Grants Reconsideration and Denies Compensation

{¶ 19} The commission subsequently granted reconsideration of the SHO's order based on a clear mistake of law, concluding that the SHO erred in finding Dr. Borrillo's report to be defective and unreliable. The commission explained that the SHO's determination that Dr. Borrillo's opinion was based on findings not supported by the medical record speaks to the persuasiveness of his report but does not preclude it from evidentiary consideration.

{¶ 20} On April 14, 2021, the commission exercised its continuing jurisdiction and issued a decision. Citing *Wallace*, 57 Ohio St.2d 55, it found that Dr. McGriff's report is not reliable evidence to be considered, because he "clearly did not expressly accept the findings of [the] examining physicians on file." But

the commission found that both Dr. Borrillo's and Dr. Mareska's reports could be relied on as evidence. Regarding Dr. Mareska's acceptance of the autopsy findings, which the SHO had previously found to be lacking, the commission stated that "the *Wallace* decision does not require a reviewing physician to blindly accept medical findings on file which the physician identifies as inconsistent, if the physician provides an explanation for that opinion." The commission found Dr. Mareska's opinion persuasive and relied solely on his reports to again deny Heilman's request for loss-of-use compensation.

### D. Heilman's Mandamus Action

{¶ 21} Heilman filed a complaint in the Tenth District, seeking a "peremptory or permanent writ of mandamus" directing the commission to take two actions: (1) vacate its order that denied loss-of-use compensation and (2) grant her request for loss-of-use compensation. She alleged that the commission's order must be vacated "given its reliance on the inherently unreliable report of Dr. Mareska, its unwarranted rejection of the report of Dr. McGriff, and its failure to account for the true physical condition of the Decedent's arms and legs, which did not function during the remainder of his life." Heilman further alleged that she is legally entitled to an order awarding her loss-of-use compensation "because the only medical reports that could be considered were those of Drs. Borrillo and McGriff, which both properly established a loss of use of all four limbs."

{¶ 22} The Tenth District referred the matter to a magistrate, who concluded that Dr. Mareska's reports cannot constitute some evidence on which the commission can rely, because he did not accept the objective findings of Dr. Scala-Barnett (who performed the postmortem examination of the decedent's body) in contravention of this court's holding in *Wallace*. 2023-Ohio-3073, ¶ 70-72 (10th Dist.). On this basis, the magistrate recommended that the court of appeals grant a limited writ of mandamus to vacate the commission's April 14, 2021 order and for the commission to redetermine Heilman's request for compensation without

consideration of Dr. Mareska's reports. *Id*. at ¶ 73. The magistrate did not decide Heilman's remaining arguments, including her contention that the commission's rejection of Dr. McGriff's report was unwarranted. *See id*. at ¶ 66-69. The commission and Heilman both filed objections to the magistrate's decision.

**{¶ 23}** The Tenth District overruled the objections and adopted the magistrate's decision as its own, *id*. at ¶ 40, and held that the commission abused its discretion by "improperly relying on Dr. Mareska's reports," *id*. at ¶ 38. In the court of appeals' view, the commission's reliance on Dr. Mareska's reports does not comply with *Wallace*, because although Dr. Mareska stated that he accepted the findings of the examining physicians, he did not accept the coroner's autopsy findings "in practice." *Id*. at ¶ 25, citing *State ex rel. Hauck v. Indus. Comm.*, 2007-Ohio-842, ¶ 3 (10th Dist.). However, the court of appeals concluded that this determination did not necessarily entitle Heilman to an award of compensation based on Dr. Borrillo's report, because the commission was not required to accept Dr. Borrillo's factual findings or conclusions, and the court of appeals was not authorized to determine the weight and credibility of the remaining evidence. 2023-Ohio-3073 at ¶ 36. The court of appeals held that Heilman had demonstrated a clear legal right to a limited writ ordering the commission to vacate its order that denied compensation, issue an order determining whether Heilman has established the decedent's alleged losses of use under R.C. 4123.57(B), and grant or deny compensation accordingly. *Id*. at ¶ 40.

**{¶ 24}** The commission's appeal and Heilman's cross-appeal are now before this court as of right.

## II. ANALYSIS

### A. Mandamus Standard

**{¶ 25}** Heilman is entitled to a writ of mandamus if she shows by clear and convincing evidence that she has a clear legal right to the requested relief, that the commission has a clear legal duty to provide that relief, and that she has no adequate

remedy in the ordinary course of the law. *State ex rel. Zarbana Industries, Inc. v. Indus. Comm.*, 2021-Ohio-3669, ¶ 10. Because the commission's decision to deny loss-of-use compensation is a decision regarding the injured worker's extent of disability, it is not appealable under R.C. 4123.512(A) and is properly challenged in mandamus. *See State ex rel. Kroger Co. v. Stover*, 31 Ohio St.3d 229 (1987), paragraph one of the syllabus (holding that an order of the Industrial Commission that "is a decision as to the extent of disability" is not subject to appeal under former R.C. 4123.519, which was renumbered R.C. 4123.512(A), *see* Am.Sub.H.B. No. 107, 145 Ohio Laws, Part II, 2990, 3153-3156).

{¶ 26} A writ of mandamus may lie when there is a legal basis to compel the commission to perform its duties under the law or when the commission has abused its discretion in carrying out its duties. *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 2008-Ohio-1593, ¶ 9. "Where a commission order is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record, the order will not be disturbed as manifesting an abuse of discretion." *State ex rel. Mobley v. Indus. Comm.*, 1997-Ohio-181, ¶ 16. But "[a] mandatory writ may issue against the Industrial Commission if the commission has incorrectly interpreted Ohio law." *State ex rel. Gassmann v. Indus. Comm.*, 41 Ohio St.2d 64, 65 (1975).

## B. The Commission's Appeal

{¶ 27} The commission first contends that the Tenth District's application of our holding in *Wallace* to Dr. Mareska's reports is overly strict and deprives the commission of its ability to evaluate the evidence.

{¶ 28} A nonexamining physician's opinion has been likened to a response to a hypothetical question used to assist the fact-finder's understanding of the matter at hand. *See Wallace*, 57 Ohio St.2d at 59-60. To ensure the evidentiary reliability of a nonexamining physician's opinion, the nonexamining physician must accept all findings of the examining physicians, but not the opinions drawn

therefrom. *Id*. at 59 (requiring a nonexamining physician to "expressly accept" all findings of the examining physicians); *but see Lampkins*, 45 Ohio St.3d at 16 (recognizing that the "expressly accept" requirement in *Wallace* has been relaxed). "If a non-examining physician fails to accept the findings of the doctors or assumes the role of the Industrial Commission, the medical opinion that is rendered does not constitute evidence to support a subsequent order of the commission." *Wallace* at 59. More particularly, the medical opinion rendered "cannot, *by itself*, be considered evidence upon which the commission could base its final order." (Emphasis added.) *Id.* at 61.

{¶ 29} Under the hypothetical-question analogy discussed in *Wallace*, it follows that when a nonexamining physician opines on the reliability or credibility of the objective findings of examining physicians—while rejecting those findings—the nonexamining physician assumes the role of the fact-finder and, thus, exceeds its role: "[T]he commission has exclusive discretion to determine the weight and credibility of the evidence, as well as all disputed facts." *State ex rel. Romero v. River City Drywall Supply, Inc.*, 2015-Ohio-1194, ¶ 18. As the Tenth District stated, "*Wallace* makes clear that a reviewing physician exceeds his role in the claim review process by offering a medical opinion that is based on anything other than the examining physicians' objective findings." 2023-Ohio-3073 at ¶ 18 (10th Dist.). *See State ex rel. Paragon v. Indus. Comm.*, 5 Ohio St.3d 72, 74 (1983); *see also State ex rel. Rhodeback v. Johnstown Mfg., Inc.*, 26 Ohio St.3d 115, 117 (1986).

{¶ 30} Here, Dr. Mareska stated that he accepted the findings of the examining physicians, including Dr. Scala-Barnett's postmortem examination, but he also stated that the "reported autopsy findings of the cerebral hemispheres seem incongruent." Dr. Mareska concluded that he "could not rely on the described autopsy findings as being accurate or reliable." As further explanation, Dr. Mareska offered in his addendum report that "the autopsy report has several

instances of either not being consistent within itself, and not being consistent with expected findings because of the clinical course," and he provided examples of the inconsistencies.

{¶ 31} The commission argues that without Dr. Mareska's identifying the inconsistencies in Dr. Scala-Barnett's autopsy report, the commission would never have known of the inconsistencies. The commission's role, however, is to *resolve* any conflicts or inconsistencies with the evidence when determining the extent of an injured worker's disability. *See, e.g.*, *State ex rel. Dobbins v. Indus. Comm.*, 2006-Ohio-2286, ¶ 8 ("The commission is the sole evaluator of evidentiary weight and credibility."). Thus, by choosing to discredit Dr. Scala-Barnett's objective findings regarding the cerebral hemisphere and to give more weight to other physicians' clinical findings, Dr. Mareska overstepped his role as a nonexamining physician and assumed the role of the commission. Because Dr. Mareska stated that he "could not rely on the described autopsy findings as being accurate or reliable," the commission could not base its final order solely on Dr. Mareska's medical opinion that the decedent sustained none of the alleged losses of use. *See Wallace*, 57 Ohio St.2d at 59; *id*. at 61 (the medical opinion "cannot, by itself, be considered evidence upon which the commission could base its final order").

{¶ 32} Relying on *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981), the commission nevertheless contends that Dr. Mareska's reports should be deemed "relevant and admissible" evidence that can be considered by the commission. In *Teece*, this court applied the *Wallace* standard to medical opinions in a combined-effect claim, i.e., a claim in which the claimant's application for compensation was based on two or more allowed conditions. *Id*. at 165-166, 168; *see also Paragon*, 5 Ohio St.3d at 74 (explaining that *Wallace*, as interpreted in *Teece*, "also extends to medical opinions in combined effect claims, where the examining physician only examines for one allowed condition").

**{¶ 33}** The claimant in *Teece* received permanent-partial-disability compensation for two separate industrial injuries and was granted an additional allowance for anxiety neurosis. At issue were the reports of four physicians relevant to the claimant's subsequent applications for permanent-total-disability ("PTD") compensation. Two orthopedic specialists had examined the claimant for her physical injuries (and reported conflicting objective findings) and two psychiatrists had examined the claimant for the allowed condition of anxiety neurosis. *Teece* at 165-167. This court determined that the psychiatrists were nonexamining physicians for the claimant's physical injuries and that they were required, in accordance with *Wallace*, to expressly adopt the factual findings of the orthopedic specialists. *Teece* at 168. Because they had not done so, this court held that their reports could not, by themselves, be considered evidence on which the commission could rely to deny PTD compensation. *Id.*, citing *Wallace*.

**{¶ 34}** Nevertheless, this court held that the evidence in these reports was "relevant and admissible" and that the commission could use the factual findings contained therein to test the credibility and reliability of the only qualified medical report in the record. *Teece* at 168; *see also State ex rel. Rouch v. Eagle Tool & Mach. Co.*, 26 Ohio St.3d 197, 199, fn. 2 (1986) (lead opinion) (describing our holding in *Teece* as a modification of our holding in *Wallace*). As this court explained in *Teece*, the holding in *Wallace* does "not require the commission to accept the factual findings stated in a properly qualified medical report at face value and unquestioningly adopt them as those of the commission." *Teece* at 169. "To do so would be tantamount to allowing a physician to determine disability rather than the commission." *Id.*

**{¶ 35}** Heilman's position on appeal is that *Teece* is distinguishable from this case. In *Teece*, all four physicians were examining physicians for at least one of the claimant's allowed conditions. Each physician had personal knowledge of the claimant and issued objective factual findings based on their examinations. Dr.

Mareska, on the other hand, had no personal knowledge of the decedent's injuries on which he could make objective factual findings, and he did not do so. Moreover, neither this court nor the Tenth District has applied the holding in *Teece* to a case such as this, i.e., a case in which the physician whose report fails to comply with the *Wallace* standard has not examined the injured worker for at least one allowed condition.

**{¶ 36}** In another case that did not involve a combined-effect claim—the claim that was involved in *Teece*—this court held that the commission could not consider as *medical evidence* a nonexamining physician's report that failed to comply with *Wallace*, 57 Ohio St.2d 55, but clarified that the commission could "seek an analysis of the medical report from [the nonexamining physician] to serve as guidance for its determination," *State ex rel. Montello v. Indus. Comm.*, 25 Ohio St.3d 239, 241 (1986). Here, the commission's argument in reliance on *Teece* is consistent with this court's statement in *Montello*. Our holding in *Montello* evinces a recognition, just as in *Teece*, that a noncompliant medical report may remain relevant and admissible, but for limited purposes. In other words, although the medical opinion rendered in a noncompliant report "cannot, *by itself*, be considered evidence upon which the commission could base its final order" (emphasis added), *Wallace* at 61, the commission is not precluded from obtaining an analysis from the nonexamining physician to serve as guidance when reviewing the remaining medical evidence for its final determination, *Montello* at 241.

**{¶ 37}** Here, the commission obtained an addendum report from Dr. Mareska, in which he provided analysis and explanation of why he believed the autopsy findings in Dr. Scala-Barnett's report were incongruent, inaccurate, and unreliable. In accordance with this court's observation in *Montello* (and reasoning in *Teece*), the commission had discretion to use the analysis in Dr. Mareska's reports only as guidance in reviewing the remaining medical evidence in the file. Instead, the commission found that Dr. Mareska's reports were persuasive medical

evidence and relied *solely* on his medical opinion to deny Heilman's request for loss-of-use compensation.

{¶ 38} In accordance with our holding in *Wallace*, we uphold the court of appeals' conclusion that the commission abused its discretion by basing its order solely on Dr. Mareska's reports. However, the court of appeals' determination that the commission should wholly "se[t] aside Dr. Mareska's reports" is too broad. 2023-Ohio-3073 at ¶ 31 (10th Dist.); *see also id.* at ¶ 72 (magistrate's opinion that Dr. Mareska's reports "must be removed from consideration"). The commission may use Dr. Mareska's reports as guidance in reviewing the remaining medical evidence in the file.

{¶ 39} The commission next argues that it was error for the Tenth District to remove Dr. Mareska's reports from consideration merely because he challenged Dr. Scala-Barnett's autopsy findings of the decedent's brain. By doing so, the commission contends that the court of appeals impermissibly reweighed the evidence and substituted its opinion for the commission's.

{¶ 40} We reject the commission's argument. The Tenth District did not determine that other evidence was more credible than Dr. Mareska's reports; it held that the commission could not rely solely on his medical opinion, because he had not accepted the objective factual findings of all examining physicians. 2023-Ohio-3073 at ¶ 17, 24-25 (10th Dist.). Nor did the court of appeals substitute its opinion for that of the commission—rather, the court of appeals returned the matter to the commission for it to exercise its discretion in accordance with the law. *Id*. at ¶ 38.

{¶ 41} For these reasons, we conclude that Heilman demonstrated a clear legal right to a limited writ ordering the commission to vacate its order denying Heilman's request for loss-of-use compensation and to issue a new order granting or denying the request. While the commission may not consider Dr. Mareska's reports as "some evidence" on which it may solely base its decision, *see Wallace*, 57 Ohio St.2d at 61, it may use the observations and analysis in his reports as

guidance in evaluating the remaining medical evidence in the file, consistent with *Montello*, 25 Ohio St.3d at 241, and *Teece*, 68 Ohio St.2d at 169.

### C. Heilman's "Alternative Reasons for Affirming the Lower Court's Ruling"

{¶ 42} In response to the commission's appeal, Heilman offers "alternative reasons for affirming" the Tenth District's ruling that the commission's order was not supported by some evidence. Heilman asserts that (1) the commission also misapplied *Wallace* by rejecting Dr. McGriff's report, (2) Dr. Mareska's reports are internally inconsistent, and (3) Dr. Mareska "contrived a consciousness test and injected an unprecedented duration-of-survival requirement." However, because the commission's appeal is not well taken for the reasons discussed above, we do not consider Heilman's "alternative reasons for affirming." *See Parton v. Weilnau*, 169 Ohio St. 145, 171 (1959) (under R.C. 2505.22, assignments of error filed by an appellee "as a shield to protect the judgment of the lower court" are to be considered "only for the purpose of preventing a reversal of the judgment under review").

### D. Heilman's Cross-Appeal

{¶ 43} In her cross-appeal, Heilman argues that we should grant a full peremptory writ directing the commission to grant Heilman's request for compensation, explaining that a peremptory writ was "the only relief that was originally available in mandamus at the time the framers of Ohio's Constitution defined that power." She contends that issuing a limited writ of mandamus—which she describes as "functionally equivalent to a remand"—is "legal error, upsetting the constitutional separation of powers" because "[r]emand after review is an appellate remedy," "appeals are an adequate remedy at law," and "Ohio law does not provide for an appeal, nor any appellate remedies like a remand, in disputes like this one over the extent of disability." *See* R.C. 4123.512(A) (providing a claimant's right to appeal to the common pleas court a final order of the commission in any injury or occupational disease case, "other than a decision as to the extent of

disability"); *see also Clendenin v. Girl Scouts of W. Ohio*, 2017-Ohio-2830, ¶ 13 (the right to appeal provided in R.C. 4123.512(A) is limited to orders that decide a claimant's "right to participate in the workers' compensation fund").

{¶ 44} Very simply, we lack the authority to order the commission to grant Heilman's application for loss-of-use compensation as she requested in her complaint. Indeed, this court observed that a writ of mandamus will not issue to control the commission's discretion with respect to an award of compensation. *See Copperweld Steel Co. v. Indus. Comm.*, 142 Ohio St. 439, 445 (1944) ("The power to determine compensability is vested in the commission and cannot be interfered with as long as its discretion is exercised soundly and within legal bounds."); *see also State ex rel. Scott v. Masterson*, 173 Ohio St. 402, 404-405 (1962) (a court may compel a public agency to exercise its discretion, but it cannot control such discretion). It was therefore not error for the court of appeals to deny Heilman's request for a writ that would compel the commission to grant her application for compensation.

{¶ 45} Instead, our workers' compensation caselaw reflects a long-standing practice of granting a limited writ when a relator fails to demonstrate entitlement to the full relief sought in mandamus and evidentiary questions remain. *See, e.g.*, *State ex rel. GF Business Equip. Inc. v. Indus. Comm.*, 2 Ohio St.3d 86, 88 (1982) (issuing a limited writ requiring the commission to make a factual determination regarding a physician's report); *State ex rel. Burroughs v. Ohio Hwy. Patrol Retirement Sys. Bd.*, 2017-Ohio-6923, ¶ 22 (explaining that a limited writ was justified in the workers' compensation case "because the commission's decision was not based on sufficient evidence"), *State ex rel. Posey v. Indus. Comm.*, 12 Ohio St.3d 298, 301 (1984) (issuing a limited writ requiring the commission to have further medical evaluations performed when the record was devoid of any evidence on which the commission could approve or deny the request for compensation); *State ex rel. Ryan Alternative Staffing, Inc. v. Moss*, 2021-Ohio-3539, ¶ 16, 21

18

(issuing a limited writ returning the matter to the commission for consideration under the correct standard rather than a writ ordering the commission to deny compensation because the commission is the exclusive finder of fact).

{¶ 46} In cases in which the evidence relied on by the commission was discredited, this court has held that the proper procedure is to return the case to the commission. *See Lampkins*, 45 Ohio St.3d at 16-17 (temporary-total disability); *State ex rel. Zamora v. Indus. Comm.*, 45 Ohio St.3d 17, 19 (1989) (PTD). And we have issued limited writs in at least two other cases similar to this one in which the commission relied on a nonexamining physician's report that failed to comply with the *Wallace* standard. *See Rhodeback*, 26 Ohio St.3d 115, and *State ex rel. Bowie v. Greater Cleveland Regional Transit Auth.*, 1996-Ohio-142. Accordingly, in line with our established practice of issuing limited writs of mandamus when we do not have the authority to issue a full writ, we reject Heilman's request for a full peremptory writ.

{¶ 47} Heilman next contends that a limited writ compelling further hearings is unwarranted when "all proper evidence" supports a claim for workers' compensation benefits. Contrary to Heilman's contention, the Tenth District did not compel further hearings before the commission. Instead, the appellate court ordered the commission to vacate its order denying compensation, determine whether Heilman has established the alleged losses of use, and enter an order granting or denying compensation accordingly. 2023-Ohio-3073 at ¶ 40 (10th Dist.). Regardless, we must refrain from determining whether the remaining evidence demonstrates the requisite losses of use. "To go further and assess the credibility of the evidence would place this court 'in the role of a "super commission," a role never envisioned by either the Ohio Constitution or the General Assembly.' " *State ex rel. Consolidation Coal Co. v. Indus. Comm.*, 1997-Ohio-46, ¶ 9, quoting *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18, 20 (1987). "The commission alone shall be responsible for the evaluation of the

weight and credibility of the evidence before it." *Burley* at 20-21. And while Heilman asserts that Dr. Borrillo's report is the only remaining evidence on which the commission may rely, we agree with the Tenth District that ordering the commission to accept Dr. Borrillo's factual findings and conclusions "as the commission's own 'would be tantamount to allowing a physician to determine disability rather than the commission.' " 2023-Ohio-3073 at ¶ 36 (10th Dist.), quoting *Teece*, 68 Ohio St.2d at 169.

{¶ 48} This is not a situation in which our returning the matter to the commission after vacating its decision would serve "no useful purpose," *State ex rel. Gay v. Mihm*, 1994-Ohio-296, ¶ 21. Although precluding the commission from relying on Dr. Mareska's reports as medical evidence leaves the commission's order unsupported, "[t]he lack of 'some evidence' supporting the denial of compensation . . . is not automatically 'some evidence' supporting an award," *State ex rel. Abner v. Mayfield*, 62 Ohio St.3d 423, 426 (1992), citing *Lampkins*, 45 Ohio St.3d at 16-17; *accord Bowie*, 75 Ohio St.3d at 461. As noted by the commission, Heilman is not entitled to a presumptive award for all alleged losses of use merely because Dr. Mareska's reports alone are insufficient as evidence to deny the award. Accordingly, we conclude that it was not error for the court of appeals to return the matter to the commission to determine, in the first instance, whether the remaining evidence establishes that the decedent suffered the alleged losses of use before he died. *See* 2023-Ohio-3073 at ¶ 40 (10th Dist.).

## III. CONCLUSION

{¶ 49} For the foregoing reasons, we uphold the court of appeals' determination that the commission is prohibited from relying on Dr. Mareska's reports as "some evidence" on which it may base its decision. However, the commission may use the observations and analysis in Dr. Mareska's reports as guidance in evaluating the credibility of the remaining medical evidence in the file. Accordingly, we affirm the Tenth District Court of Appeals' judgment granting a

limited writ of mandamus. The commission shall vacate its order that denied Heilman's request for scheduled-loss compensation and issue an order determining whether Heilman established under R.C. 4123.57(B) the decedent's loss of use of both arms and legs, loss of sight in both eyes, and loss of hearing in both ears and grant or deny compensation accordingly.

Judgment affirmed.

_____

**KENNEDY, C.J., joined by DEWINE and DETERS, JJ., dissenting.**

{¶ 50} There are two reasons why appellee and cross-appellant, Patricia A. Heilman, is not entitled to scheduled-loss compensation for workplace injuries that her husband, Arthur J. Heilman, suffered before he died as the result of an industrial accident. First, the statutory scheme at issue here allows scheduled-loss benefits to be paid to an injured worker's surviving spouse in only two circumstances: (1) when an award had been made before the injured worker's death and (2) when the injured worker suffered the loss of a member by severance. R.C. 4123.57(B). Neither happened here. Second, the Industrial Commission did not abuse its discretion in finding that Arthur had not suffered a scheduled loss, i.e., the loss of use of his limbs, the loss of sight in both eyes, or the permanent and total loss of hearing in both ears. The Tenth District Court of Appeals therefore erred in issuing a writ of mandamus compelling the commission to vacate its order, and its judgment should be reversed. Because the majority does not, I dissent.

**Survivor Benefits**

{¶ 51} R.C. 4123.57(B) provides for payment of scheduled-loss benefits in weekly installments to compensate the injured worker for the loss of certain body parts. The General Assembly included two provisions in R.C. 4123.57(B) that allow the injured worker's surviving spouse to receive those scheduled-loss payments when the injured worker dies.

**{¶ 52}** The first states that "[w]hen an award under [R.C. 4123.57(B)] has been made prior to the death of an employee all unpaid installments accrued or to accrue under the provisions of the award shall be payable" to the injured worker's surviving spouse. R.C. 4123.57(B). The second provides that if an injured worker "has sustained the loss of a member by severance, but no award has been made on account thereof prior to the employee's death, the administrator shall make an award in accordance with this division for the loss," and that amount is payable to the injured worker's surviving spouse. *Id.*

**{¶ 53}** The General Assembly limited the availability of survivorship benefits stemming from scheduled losses to these two circumstances to "ensure[] that death benefits for loss of use have a strong evidentiary basis." *State ex rel. Waste Mgt. of Ohio, Inc. v. Indus. Comm.*, 2022-Ohio-4581, ¶ 54 (Kennedy, J., dissenting). In both situations, the loss of use is established either because it has already been proven and resulted in an award or because it is self-evident by severance. Otherwise, determining whether a deceased worker suffered any compensable loss of use could be impossible.

**{¶ 54}** Patricia is not entitled to receive scheduled-loss benefits under either prong of R.C. 4123.57(B). No scheduled-loss benefits were awarded before Arthur's death; he died soon after the injury occurred, and Patricia did not request scheduled-loss compensation until almost a year after her husband died. Therefore, no payments "accrued or [were] to accrue" under R.C. 4123.57(B). And because Arthur did not suffer a scheduled loss by severance, the second prong, which allows the surviving spouse to receive an injured worker's scheduled-loss benefits that had not been previously awarded, is inapplicable. Nothing in R.C. 4123.57(B) provides for payment of scheduled-loss compensation to Patricia.

**{¶ 55}** Arthur's death is tragic, but the statutory scheme the General Assembly enacted does not permit an award of scheduled-loss compensation to his surviving spouse under these facts. This alone is reason enough to reverse the

judgment of the court of appeals.  The second reason why reversal is necessary is discussed next.

### Expert Opinion as Evidence

{¶ 56} A witness is traditionally "'incompetent' to testify to any fact unless he or she possesses firsthand knowledge of that fact."  Weissenberger, *Weissenberger's Ohio Evidence Treatise*, § 602.1, at 19 (2024); *see also* Evid.R. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").  There is an exception to the personal-knowledge requirement that allows an expert to give an opinion by answering a hypothetical question based on an assumed set of facts. Evid.R. 705; 1 McCormick on Evidence, § 14 (8th Ed.).  However, in Ohio, "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or *admitted in evidence* at the hearing."  (Emphasis added.)  Evid.R. 703.

{¶ 57} The court has applied these principles to workers' compensation proceedings.  *E.g.*, *State ex rel. Wallace v. Indus. Comm.*, 57 Ohio St.2d 55, 59 (1979).  When a physician who has not personally examined an injured worker gives a medical opinion about the worker's injury, the physician is first "required to review all the relevant medical evidence and accept [as true] the objective findings of all the examining physicians."  *State ex rel. Romero v. River City Drywall Supply, Inc.*, 2015-Ohio-1194, ¶ 12, citing *Wallace* at 59.  This is the *Wallace* rule.

{¶ 58} In this case, when a piece of machinery exploded, Arthur was struck in the head by a metal beam and never regained consciousness.  John C. Mareska, M.D., completed a medical-file review related to Patricia's claim for scheduled-loss compensation for her husband's injuries.  Included in Arthur's medical file is the coroner's autopsy report, in which the coroner concluded that the cause of death was "craniocerebral injuries."  In addition to the medical findings by Arthur's

examining physicians, Dr. Mareska also reviewed the opinions given by Patricia's medical expert.

{¶ 59} Dr. Mareska concluded that certain findings the coroner had made in relation to Arthur's brain injury—specifically, the description of the decedent's cerebral hemispheres—were contradictory and unreliable, and Dr. Mareska said that he "could not rely on the described"—i.e., those specific—"autopsy findings." And because this part of Dr. Mareska's opinion did not conform to the *Wallace* rule, the majority decides that his entire report is not evidence.

{¶ 60} Dr. Mareska discounted a few of the coroner's findings regarding the physical manifestations of Arthur's brain injury, but doing that should not taint his other opinions on other subjects relying on other medical findings. Dr. Mareska gave several different expert opinions regarding Arthur's injuries. He explained that insufficient medical evidence existed to show that Arthur had lost his vision or his hearing. Regarding Arthur's use of his limbs, Dr. Mareska concluded that any loss was not caused by injury either to the arms and legs or to the spinal cord.

{¶ 61} And finally, in a separate section of his report, Dr. Mareska opined that the coroner's contradictory descriptions of Arthur's cerebral hemispheres were not supported by the CT scan, radiographic reports, the neurosurgical operative procedure report, and other findings within the autopsy. It is this last opinion that is contrary to the *Wallace* rule. But importantly, that opinion related solely to the question whether Arthur had lost the use of his limbs from his loss of brain function. Dr. Mareska's disagreement with the coroner's findings therefore did not taint his opinions that (1) Arthur had not suffered the loss of vision or hearing or (2) Arthur's arms, legs, and spinal cord showed no injury that could cause the loss of use of his limbs.

{¶ 62} No one disputes that Arthur suffered a severe brain injury causing loss of brain function. Nor do the parties point to any evidence in the record showing that disagreement over the physical manifestations of Arthur's brain injury

makes any difference in determining whether he lost the use of his limbs or that it affects the evidentiary value of any of Dr. Mareska's opinions. However, to the extent that the commission could not rely on Dr. Mareska's opinion that Arthur's brain injury did not cause loss of use of his limbs, any error is harmless because there is no scheduled-loss compensation available for loss of brain function.

{¶ 63} R.C. 4123.57(B) provides scheduled-loss compensation for the loss of digits, vision, hearing, and use of limbs. Neither the loss of use of the brain stem nor the loss of brain functioning are compensable losses under the partial-disability statute. *See State ex rel. Smith v. Indus. Comm.*, 2014-Ohio-513, ¶ 2 ("[T]he General Assembly has not included loss of brain-stem functioning in the schedule for compensation set forth in R.C. 4123.57.").

{¶ 64} In *Smith*, this court addressed "whether R.C. 4123.57(B) permits an award of compensation for the scheduled loss of vision or hearing when the inability to comprehend sights or sounds results from a lack of brain-stem function." *Id.* at ¶ 12. This court held that it did not, explaining that "R.C. 4123.57 authorizes compensation for loss of sight when the claimant shows an actual loss of vision as result of injury to the eye and for loss of hearing occasioned by injury to the ear." *Id.* at ¶ 15. Here, there was no injury to Arthur's eyes or ears, so *Smith* precludes the award of scheduled-loss compensation for loss of vision and hearing.

{¶ 65} Our decision in *Smith* did not address whether compensation is available for the loss of use of the arms or legs caused by loss of brain function. That question surfaced in *State ex rel. Walters v. Indus. Commission of Ohio,* 2024-Ohio-552, ¶ 34, but we declined to answer it. Nonetheless, we noted in *Walters* that "*Smith's* basic premise seemingly applies to any alleged loss under R.C. 4123.57(B)—namely, in the absence of an injury to the affected body part, evidence of a brain injury that precludes definitive testing of the alleged loss is insufficient to support a finding that the affected body part no longer functions." *Walters* at ¶ 31.

**{¶ 66}** And in considering whether the injured worker in *Walters* had suffered a loss of use of limbs, we pointed out that "[h]ospital records indicate that decedent was unconscious and intubated at the scene of the accident, that he remained comatose until his death and was thus unable to participate in motor and coordination examinations of his extremities, and that he did not suffer any injuries to his arms or legs." *Id.* at ¶ 38. That sounds like this court was applying *Smith* to the loss of the use of limbs. However, this court went on to discuss the dueling expert reports before the commission and ultimately concluded that some evidence supported the denial of scheduled-loss compensation. *Id.* at ¶ 38-39.

**{¶ 67}** In this case, Arthur did not have an injury to his arms and legs, and testing his use of his limbs was impossible because he was unconscious due to brain injury and heavy sedation. The fact that Arthur suffered brain damage that left him unresponsive does not, by itself, show that his arms and legs did not work. Patricia's expert, Dr. Donato J. Borillo, did opine that there was damage to Arthur's spine that would have caused the loss of use of his arms or legs even if he had regained consciousness. Dr. Borillo, however, was contradicted by Dr. Mareska, who stated that there was no spinal injury that would have caused the loss of use of Arthur's arms and legs. It is the commission's role to resolve this factual conflict.

**{¶ 68}** In sum, Dr. Mareska's expert report provides some evidence that Arthur did not lose his vision or hearing and that no injury to his arms, legs, or spine caused Arthur to lose the use of his limbs. And although Arthur's brain injury may have prevented him from *consciously* seeing, hearing, and moving, that does not mean that his eyes, ears, arms, and legs would not have worked if Arthur had been able to recover from his brain injury. Therefore, the commission did not abuse its discretion by denying Patricia's request for scheduled-loss compensation, and she is not entitled to a writ of mandamus to compel the commission to vacate its decision.

## Conclusion

**{¶ 69}** R.C. 4123.57(B) does not authorize a surviving spouse to receive compensation for the injured worker's scheduled loss when the worker dies before that compensation can be awarded and when the loss is not caused by severance. And even if compensation were available in these circumstances, the commission denied the claim based on its finding that no scheduled loss occurred, and that determination is supported by some evidence and therefore was not an abuse of discretion.

**{¶ 70}** The Tenth District Court of Appeals should have denied the writ Patricia requested, and for this reason, its judgment should be reversed. Because the majority does not do that, I dissent.

————————————

Plevin & Gallucci Co., L.P.A., Frank L. Gallucci III, and Bradley E. Elzeer II; and Flowers & Grube, Paul W. Flowers, Louis E. Grube, and Kendra N. Davitt, for appellee and cross-appellant.

Dave Yost, Attorney General, and Natalie J. Tackett, Assistant Attorney General, for appellant and cross-appellee.

————————————